IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| MILCAH "MIMI" MULUGETA, : | |
| : | Civil Action File No. |
| Plaintiff, : | |
| vs. : | 1:17-cv-03583-LMM |
| : | |
| TAS OF ATLANTA, LLC; ROCK : | |
| AND TACO SS, LLC; PAUL : | |
| YUWACHIT; CHRISTOPHER : | |
| HANCOCK; and JOHN : | |
| BRADFORD "BRAD" : | |
| HANCOCK, : | |
| : | |
| Defendants. : | |

**JOINT MOTION TO APPROVE FLSA SETTLEMENT**

### 1. INTRODUCTION

This is an FLSA action brought against two separate groups of people and corporate entities, connected by their relationship with one of the individuals, Paul Yuwachit. Plaintiff Milcah "Mimi" Mulugeta was employed as a bartender and later assumed assistant manager duties for some of the Defendants from approximately May 2015 through November of 2016. As set forth in more detail below, one set of Defendants defaulted after being served with this lawsuit. The second group of Defendants (namely, Christopher and Bradford Hancock (the "Hancocks") responded, litigated this matter, and have now entered into an

agreement with Plaintiff to resolve her claims against them. Plaintiff and the Hancocks seek to have the Court approve this agreement.

2. **BACKGROUND**

On September 15, 2017, Plaintiff filed this action asserting claims under the Fair Labor Standards Act [Dkt.1] alleging she was not properly paid minimum wage and overtime as required under the FLSA. As introduced above, she brought claims against several individuals and corporate entities, some of which were involved in the ownership and management of a restaurant named Moderna Taqueria, and others involved in the operations of Rock-N-Taco also located at 8560 Roswell Road in Sandy Springs, Georgia. Which individuals and corporate entities were responsible for Plaintiff's employment during what period of time is a complicated factual and legal question that was contested by Plaintiff and the Hancocks during the litigation. The following summary of Plaintiff's allegations regarding the entities and timelines is presented for the Court to understand the issues facing the Parties. The Hancocks do not necessarily agree with this summary, but the Parties' differences form part of the factual dispute that demonstrates that a negotiated resolution is in the interest of all Parties.

3. **SUMMARY OF PLAINTIFF'S CLAIMS**

This summary is taken from Plaintiff's allegations.

### A. May 2015 to November 2015: Yuwachit and TAS of Atlanta, LLC

From approximately May 2015 until November 2015, Defendants TAS of Atlanta, LLC and Paul Yuwachit employed Plaintiff as a bartender at Moderna

Taqueria. At all times relevant from approximately May 2015 until November 2015, Plaintiff's sole form of remuneration was the receipt of tips from customers. Defendants TAS of Atlanta, LLC and Paul Yuwachit failed to pay Plaintiff an hourly wage in violation of the FLSA.

**B.     November 2015 to December 2015**

In approximately late-November or early-December 2015, the Moderna Taqueria restaurant closed. In approximately December 2015, the "Rock-N-Taco" restaurant opened at the same location as Moderna Taqueria's previous location, 8540 Roswell Road, Sandy Springs, Georgia but Plaintiff did not work for Defendants during this time period.

**C.     April 2016 to August 2016: Rock and Taco SS, LLC; Paul Yuwachit, Chris and Brad Hancock**

On April 4, 2016, Defendants Rock and Taco SS, LLC, Chris Hancock, and Brad Hancock (again, Plaintiff's allegation) hired Mulugeta as a bartender at the "Rock-N-Taco" restaurant located at 8540 Roswell Road, Sandy Springs, Georgia. Plaintiff also alleges that Paul Yuwachit was an "employer" during this time period as a partial owner. From approximately April 4, 2016 through August 2016, Plaintiff worked as a bartender at Rock-N-Taco. From approximately April 4, 2016 through August 2016, Defendants paid Plaintiff at a rate of $2.13 per hour plus tips for her work as a bartender but required her to share tips in an illegal tip pool. As a result of illegal tip pooling, Defendants were not legally entitled to utilize the 'tip

3

credit" and, therefore, Defendants failed to compensate Plaintiff at or above minimum wage of $7.25 for each hour she worked as required by the FLSA.

### D. August/September 2016 to November 2016: Rock and Taco, SS, LLC; Chris and Brad Hancock

Beginning in late August or early September 2016, Defendants changed Plaintiff's job title to "Manager" and, Plaintiff contends, misclassified her as exempt in that Plaintiff's primary duties as a "Manager" during this time was to assist management as needed and to serve customers. In addition, Mulugeta was paid $10.00 per hour for her work thus not meeting the salaried test for an exemption. Plaintiff regularly worked in excess of forty hours a week in this time frame. Defendants compensated her sporadically from September 2016 through end of her employment with both personal and payroll checks. From September 2016 through November 12, 2016, Defendants gave Plaintiff a total of seven (7) personal and payroll checks totaling $1,800.00. Defendants terminated Plaintiff's employment on November 12, 2016.  During this time frame, Plaintiff alleges she was not paid the required minimum wage for all hours worked and was not paid an overtime premium as required.

### 4. HISTORY OF THE LITIGATION.

After Plaintiff filed and served this action, Defendants TAS of Atlanta, LLC, and Paul Yuwachit defaulted. Generally, Defendants TAS and Yuwachit are responsible for the initial time of Plaintiff's employment with Defendants. Plaintiff has obtained a clerk's default [Dkt. 17] as to TAS and Yuwachit and is

contemporaneously filing a motion for default judgment as to those two Defendants.

Defendants Rock and Taco, SS, LLC[1], Christopher Hancock, and Bradford "Brad" Hancock answered this suit[2] and defended its claims. Plaintiff and the Hancocks exchanged written discovery and took each other's depositions. As part of the discovery process, the Hancocks produced no time or pay records, as they had none in their possession, custody, or control. Rather, Plaintiff relied upon time and pay records that she had maintained throughout her employment with Rock-N-Taco.

Although the Hancocks deny all liability, the Parties have since reached a compromise to resolve the matter. The resulting settlement document ("the Agreement") is attached hereto as Exhibit 1. The Court will note that the document is executed only by the Plaintiff. The Defendants are still in the process of executing the document and will provide an executed document shortly. The Parties now seek approval from this Court to avoid the risks, distractions, and costs that will result from further litigation.

5. **ARGUMENT AND CITATIONS OF AUTHORITY**

   A. **Standards for Approval of an FLSA Compromise**

---

[1] Rock and Taco, SS, LLC is a defunct corporation with no assets and is not a party to the settlement or default.
[2] Plaintiff previously dismissed her claims against Rock-N-Taco, Inc. [Dkt. 42]

*Lynn's Food Stores* requires that the Court review a proposed compromise of FLSA claims for "fairness." The criteria that district courts should consider in determining "fairness" is less than clear. As the Court in *Dees v. Hydradry, Inc.*, 706 F. Supp. 2d 1227, 1240-41 (M.D. Fla. 2010) noted:

> *Lynn's Food* requires the Parties to an FLSA compromise to present proposed agreement to the district court, which "may enter a stipulated judgment after scrutinizing the settlement for fairness." [*Lynn's Foods*,] 679 F.2d at 1353. Although noting the unfairness of the settlements at issue, *Lynn's Food* specifies no criteria for evaluating the "fairness" of a proposed compromise in a different case.

More recently, the United States District Court for the Northern District of Georgia promulgated a similar standard in *Gamble v. Air Serv Corp.*, 247 F. Supp. 3d 1302, 1305 (N.D. Ga. 2017)

### B.   Pertinent Information Must be Disclosed to the Court

In *Gamble* and well as *Dees*, the court found that the parties should provide a district court with "enough information for the court to examine the bona fides of the dispute" including the nature of the dispute, the material facts and claims, and an estimate of hours worked or compensation owed in order to understand the nature of the compromise.[3] In addition, the court should address the attorneys' fees

---

[3] *Dees v. Hydradry*, Inc., 706 F. Supp. 2d 1227, 1242 (M.D. Fla. 2010)

agreed upon to insure that the fees agreed upon did not adversely affect a plaintiff's recovery.[4]

The *Dees* Court continued:

> *Bonetti v. Embarq Management Co.,* [715 *F. Supp. 2d* 1222 (M. D. Fla. 2009)], describes the problem faced by a district court:

> Short of a bench trial, the Court is generally not in as good a position as the Parties to determine the reasonableness of an FLSA settlement. Many factors may be in play as the Parties negotiate a compromise that is acceptable to both sides. The Parties may disagree as to the number of hours worked by the plaintiff, the plaintiff's status as an exempt employee, or the defendant's status as a covered employer. In certain cases, the Defendant may assert (or threaten to assert) a counterclaim arising from the employment relationship. If the Parties are represented by competent counsel in an adversary context, the settlement they reach will, almost by definition, be reasonable. Rarely will the Court be in a position to competently declare that such a settlement is "unreasonable."[5]

Further from the *Gamble* Court (quoting *Dees)*:

> To fully implement the policy embodied by the FLSA, the district should scrutinize the compromise in two steps. First, the court should consider whether the compromise is fair and reasonable to the employee (factors `**internal' to the compromise**). If the compromise is reasonable to the employee, the court should inquire whether the compromise otherwise

---

[4] *Dees v. Hydradry, Inc.,* 706 F. Supp. 2d 1227, 1243 (M.D. Fla. 2010)(quoting *Bonetti*,
715 F. Supp. 2d 1222 (M.D. Fla.. 2009) (noting that the court would not separately consider the reasonableness of the fee to be paid to counsel unless there was some indication that settlement amount or process was problematic).
[5] *Dees,* 706 F. Supp. 2d 1227, 1241 (M.D. Fla. 2010) (quoting *Bonetti*).

7

impermissibly frustrates implementation of the FLSA (**factors 'external' to the compromise**). The court should approve the compromise only if the compromise is reasonable to the employee and furthers implementation of the FLSA in the workplace.[6]

### *(1)   The Internal Factors:*

(1) The existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of plaintiffs' success on the merits; (5) the range of possible recovery amounts; and (6) the opinions of the counsel.[7]

### *(2)   The External Factors:*

Compromise of a retrospective dispute may be permissible if, for example, the FLSA issue in a case is unresolvedly close on the facts or the law or some extraordinary circumstance (say, a suddenly disabled claimant or an employer in liquidation) commends a speedy or certain resolution. On the other hand, several factors may commend rejecting a proposed compromise, including the presence of other employees situated similarly to the claimant, a likelihood that the claimant's circumstance will recur, a history of FLSA non-compliance by the same employer

---

[6] *Gamble v. Air Serv Corp.*, 247 F. Supp. 3d 1302, 1305 (N.D. Ga. 2017)(quoting *Dees v. Hydradry, Inc.*, 706 F. Supp. 2d 1227, 1241 (M.D. Fla. 2010))(emphasis added)
[7] *Dees v. Hydradry, Inc.*, 706 F. Supp. 2d 1227, 1241 (M.D. Fla. 2010); *Pessoa v. Countrywide Home Loans, Inc.*, 2007 U.S. Dist. LEXIS 24076, 2007 WL 1017577, at 3 (M.D. Fla. Apr. 2, 2007) (quoting *Leverso v. South Trust Bank of Ala., Nat. Assoc.*, 18 F.3d 1527, 1531 n.6 (11th Cir. 1994)).

or others in the same industry or geographic region, or the requirement for a mature record and a pointed determination of the governing factual or legal issue to further the development of the law either in general or in an industry or in a workplace. In all instances, the district court should faithfully execute the congressional mandate for "minimum wages, promptly paid . . . for the lowest paid segment of the nation's workers."[8]

6. **THIS FLSA COMPROMISE SHOULD BE APPROVED AS FAIR**

    **A. Pertinent Information on the Settlement**

As noted above, Plaintiff alleges she worked for various combinations of the Defendants in different roles over the course of her employment. She alleges she was underpaid both minimum wages and overtime wages. Based on Plaintiff's discovery responses and Initial Disclosures, there are 4 different phases of her employment:

| Time Frame | Plaintiff's Allegation[9] as to Responsible Parties | Plaintiff's Allegation of Unpaid Wages[10] |
|---|---|---|
| May 2015 – November 2015 (bartender) | TAS of Atlanta, LLC and Paul Yuwachit | $8,091.00 |

---

[8] *Dees v. Hydradry, Inc.*, 706 F. Supp. 2d 1227, 1244 (M.D. Fla. 2010)(*quoting D.A. Schulte v. Gangi*, 328 U.S. 108, 116, 66 S. Ct. 925, 90 L. Ed. 1114 (1946)).
[9] Plaintiff's understanding of which person and what entity was responsible for what time period does not exactly match her Complaint because her understanding of those facts has changed over the course of discovery and document review. Again, the Hancocks contest many of Plaintiff's allegations.
[10] See worksheet as Exhibit 2

| November 2015 – December 2015 | None-Restaurant Closed | |
|---|---|---|
| April 2016 – August 2016 (bartender) | Paul Yuwachit, Rock and Taco SS, LLC; Chris and Brad Hancock | $4,369.56 |
| August/September 2016 – November 2016 (Manager) | Rock and Taco SS, LLC; Chris and Brad Hancock | $6,082.70 ($7,882.70 - $1,800 paid) |

Per these estimates, the total unpaid wages sought against the Hancocks (the ones who have agreed to settle their claims) is approximately $10,452.26. Plaintiff also sought liquidated damages that could have doubled these amounts

Under the Agreement, Plaintiff will receive a gross settlement of $16,000. As noted below, this amount will be reduced by $2,000 per her retainer agreement with counsel. Using the gross payment of $16,000 as comparison, Plaintiff has agreed to settle her claim for approximately 77 percent of the unpaid wages and liquidated damages she sought against the settling Defendants.[11] Plaintiff intends to seek the remainder in her default against Yuwachit and TAS of Atlanta, Inc. Unlike other FLSA settlement agreements, Plaintiff will be paid within a short time of Court approval rather than paid over a longer period of time. This immediate payment is of benefit to the Plaintiff and reduces her risk that the settlement will

---

[11] As the Court knows, liquidated damages are based on a different standard of proof and would likely not be awarded until after a trial.

not be paid. As to the likelihood of prevailing on the merits, the Hancocks claim that they were not Plaintiff's "employer" as that term has been applied by the Eleventh Circuit. Plaintiff believes that the likelihood of success is high on liability but concedes that the amount of overtime could be contested given that there were periods of time for which no time records were available. Regardless of the difference in opinions, the amount Plaintiff will receive under the settlement is substantially all that she would have been entitled to receive at trial against the settling Defendants.

As to attorneys' fees and costs, the Parties agreed that Plaintiff's counsel would receive direct attorneys' fees and costs of $47,500.00. In all negotiations with the Hancocks and as between Plaintiff and her counsel, Plaintiff's portion and counsel's portion were always segregated such that Plaintiff could make an informed decision as to the proposal. When Plaintiff entered into her fee agreement with her counsel, Plaintiff was afforded the option of either paying counsel a cost retainer or assigning 25% of eventual liquidated damages in return for counsel's agreement to fund costs without recourse. Plaintiff opted to not pay a cost retainer. Therefore, pursuant to the retainer agreement between counsel and Plaintiff, counsel will also receive twenty-five percent of the liquidated damages ($2,000.00) paid to Plaintiff for a total attorneys' fees/costs amount of $49,500.00.[12]

---

[12] The proposed Settlement Agreement lists the net amounts for ease of administration.

Other courts in both the Middle and Northern District of Georgia have approved such an arrangement. [13] The Hancocks are not a party to this contractual arrangement. The timekeepers and rates are:

| Time Keeper | Position | Billable Rate |
|---|---|---|
| Charles R. Bridgers | Partner | $425 |
| Michael A. Caldwell | Partner | $425 |
| Mitchell D. Benjamin | Partner | $425 |
| Matthew Herrington | Associate | $325 |

---

[13] See *Moore v. Americus Restaurant Group, Inc.*, 1:17-cv-107(WLS), Dkt. 21 (M.D. Ga. October 6, 2017) (The Court discussed the 25% arrangement in approving an attorneys' fee award noting that the "[F]ee agreement to advance costs provided that Plaintiff may choose to personally bear the costs of litigation or have the firm hold him harmless in the event of no recovery for a fee of 25% of liquidated damages. Plaintiff chose the latter.") See *Smith, et.al. v. Childfirst 24 Hour Childcare, et.al.* 1:18-cv-03786-WMR, NDGa, Dkt. 56: "the attorney's fees, including the additional percentage of liquidated damages, are reasonable and customary."  Accord as to fees and additional percentage, *Haddock v. Jasper County, Georgia*, 5:18-cv-00292-MTT (MDGa, Dkt. 14) ); *Stowers v. Pharmalife Holdings, LLC et.al.* 1:18-cv-03776-JPB (NDGa, Dkt. 27).

| Jessica Sorrenti | Senior Paralegal | $165 |
|---|---|---|
| Sarah Toenes | Paralegal | $125 |

Counsel currently has a total of $4,350.46 in tracked expenses[14] and $63,111.45 in tracked time[15] at hourly rates that have been previously approved in this District.[16]

Plaintiff's counsel has also organized time billed into broad categories that reflect the work done by phase of litigation as follows: [17]

| Phase of Litigation | Description | Amount Billed Per |
|---|---|---|

---

[14] See Exhibit 3
[15] See Exhibit 4
[16] See *Villa-Garcia v. Latin Mundo #2, Inc. et al.*, Civil Action No. 1:17-cv-1834-TWT, Dkt. 23 (N.D. Ga. Feb. 21, 2018) (approving $425 for all partners, $325 for associate Matthew Herrington, $165 for senior paralegal Jessica Sorrenti, and $125 for paralegal Sarah Toenes); Accord, e.g., *Smith, et.al. v. Childfirst 24 Hour Childcare, et.al.*, 1:18-cv-03786-WMR, NDGa, Dkt. 56: "the attorney's fees . . . are reasonable and customary;" *Haddock v. Jasper County, Georgia*, 5:18-cv-00292-MTT (MDGa, Dkt. 14); *Willis v. Nishi Dreams, et.al.* 1:19-CV-00986-AT (NDGa, Dkt. 17); *Stowers v. Pharmalife Holdings, LLC et.al.* 1:18-cv-03776-JPB (NDGa, Dkt. 27).
[17] See Exhibit 5. Plaintiff's counsel has organized the time billed (not expenses) into broad categories that reflect the phase of the litigation for both management, client budget, and fee application purposes. The categorization is reasonably accurate for providing an overview of the effort incurred during each phase of the litigation given the limitation that it is sometimes difficult to categorize an individual entry with 100 percent certainty.

|  |  | Phase and Percentage of Total Fees |
|---|---|---|
| 01-Intake | Initial meetings with clients; initial development of factual narrative, advice about the process of litigation, decision to proceed, explanation of DCBFB Client instructions and Retainer Agreement | $2,761.50 - 4.37% |
| 02-Complaint_ COIP_Service | Initial factual investigation; draft and revisions of Complaint; client review of Complaint; Certificate of Interested Persons | $5,093.50 – 8.06% |
| 03-Ans_Discl_JPR | Post-Answer activities, including creation and review of an interlineated comparison of Complaint & Answer, planning, preparation of Initial Disclosures; preparation of Joint Preliminary and Discovery Report participation in Joint Preliminary Conference | $2,826.25 – 4.47% |
| 06-DamageEst | Damage Estimate: Efforts reviewing time and pay records to prepare an estimate of Plaintiff's damages | $1,643.33- 2.60% |
| 07-Discovery_Wr | Efforts in preparing and responding to written discovery | $9,752.25- 15.43% |
| 08-Subpoenas | Issuance and Response to Subpoenas for third party documents and trial witnesses (different from written discovery) | $295.50- .41% |

| | | |
|---|---|---|
| 12-Depositions | Scheduling, noticing, preparing for and conducting depositions of a Rule 30(b)(6) representative and both individual defendant | $12,616.67-19.96% |
| 13-Motions | Motions including Motion to Approve FLSA settlement | $6,010.80-9.51% |
| 15-MSJ | All efforts related to motions for summary judgment including factual development, briefing, and similar activity | $11,528.58-18.24% |
| 16-Settlement | Efforts to resolve matter including negotiation and attempts to resolve attorney fee issues | $4,595.41-7.27% |
| 19-Trial and Trial Prep | Preparation in anticipation of Trial | $33.00-.05% |
| 26-Client Comm | General communication with client during scope of representation not otherwise categorized | $1,871.00-2.96% |
| 29-Misc | Miscellaneous Duties Related to Case, review of incoming correspondence, incoming orders, extensions, staff assignments | $4,059.66-6.42% |
| 30-Factual Development | Interviewing witnesses and reviewing facts not otherwise categorized | $170.00-.27% |

This time does not include further efforts that will be required to finalize the settlement. In summary, Plaintiff's counsel's total fee (with the additional percentage) is $49,500 out of a total of $67,634.41 in tracked time and expenses.

This total amount of fees does include, necessarily, effort made that is properly the responsibility of the defaulting Defendants (Yuwachit and TAS of Atlanta). This fact was discussed during negotiation and compromises were made based on this fact. Overall, Plaintiff's counsel states that the proposed fee received is fair and appropriate given the work incurred in this matter.

### B. Internal Factors

As noted above, *Dees* lists a number of internal factors: (1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of plaintiffs' success on the merits; (5) the range of possible recovery amounts; and (6) the opinions of the counsel. [18]

Here, the Parties were each represented by experienced counsel in an adversarial process. These facts demonstrate the absence of fraud or collusion. The Parties understood that litigation is time consuming and expensive. As noted above, but for this resolution, counsel would be required to spend significant time preparing for and attending trial. Plaintiff and counsel believe that disputed issues of fact likely would require this case to go to trial. Uncertainties and risks, therefore, existed for all Parties. This uncertainty was a catalyst to the resolution.

---

[18] *Dees v. Hydradry, Inc.*, 706 F. Supp. 2d 1227, 1241 (M.D. Fla. 2010); *Pessoa v. Countrywide Home Loans, Inc.*, 2007 U.S. Dist. LEXIS 24076, 2007 WL 1017577, at 3 (M.D. Fla. Apr. 2, 2007) (quoting *Leverso v. South Trust Bank of Ala., Nat. Assoc.*, 18 F.3d 1527, 1531 n.6 (11th Cir. 1994)).

As noted above, the resolution is on the high side of the range of what a jury might award at trial. In sum, the Parties and their counsel prudently attempted to devote their limited resources toward settlement, rather than continued litigation.

### C. External Factors

As stated above, the *Dees* Court noted the following external factors:

> Compromise of a retrospective dispute may be permissible if, for example, the FLSA issue in a case is unresolvably close on the facts or the law or some extraordinary circumstance . . . commends a speedy or certain resolution. On the other hand, several factors may commend rejecting a proposed compromise, including the presence of other employees situated similarly to the claimant, a likelihood that the claimant's circumstance will recur, a history of FLSA non-compliance by the same employer or others in the same industry or geographic region, or the requirement for a mature record and a pointed determination of the governing factual or legal issue to further the development of the law either in general or in an industry or in a workplace.[19]

Other "external factors" to examine when considering the fairness of a proposed FLSA settlement, address whether the compromise frustrates the purposes of the FLSA. *Dees*, 706 F. Supp. 2d at 1244. Plaintiff is aware of no other pending FLSA claims against the Hancocks. The outcome of this claim was to be determined based on the number of hours Plaintiff worked and corporate responsibility rather than a novel or evolving issue of law. The Agreement does not provide for

---

[19] *Dees v. Hydradry, Inc.*, 706 F. Supp. 2d 1227, 1244 (M.D. Fla. 2010) (*quoting D.A. Schulte v. Gangi*, 328 U.S. 108, 116, 66 S. Ct. 925, 90 L. Ed. 1114 (1946)).

confidentiality or other restrictive covenants. The Agreement will be publicly filed. Only claims brought in the underlying suit are to be dismissed. Given these facts, the Parties believe that no "external" factors bar the approval of this Agreement.

## 7.  CONCLUSION

For the foregoing reasons, the Parties respectfully request that the Court approve the compromise entered into between the Parties. The Parties also request that the Court dismiss this action with prejudice as to Defendants Christopher Hancock and John Bradford "Brad" Hancock, but retain jurisdiction to enforce the Parties' Settlement Agreement, if necessary. A proposed order is attached hereto for the Court's consideration.

Pursuant to LR 7.1 NDGA, the undersigned counsel certify that this Motion was prepared with Times New Roman (14 point), one of the fonts and point selections approved by the Court in LR 5.1 C. NDGa.

Respectfully submitted.

| DELONG, CALDWELL, BRIDGERS, FITZPATRICK & BENJAMIN, LLC | THOMPSON HINE LLP |
|---|---|
| */s/ Charles R. Bridgers* <br> Michael A. Caldwell <br> Georgia Bar No. 102775 <br> michaelcaldwell@dcbflegal.com <br> Charles R. Bridgers <br> Georgia Bar No.   080791 <br> charlesbridgers@dcbflegal.com | */s/ Bryan A. Stillwagon* <br> John F. Wymer <br> Georgia Bar No. 779418 <br> john.wymer@thompsonhine.com <br> Bryan A. Stillwagon <br> Georgia Bar No. 815065 <br> bryan.stillwagon@thompsonhine.com <br><br> Two Alliance Center |

101 Marietta Street, NW  
Suite 2650  
Atlanta, Georgia 30303  
(404) 979-3150 Telephone  
(404) 979-3170 Facsimile  

Counsel for Plaintiff

3560 Lenox Road Suite 1600  
Atlanta, Georgia 30326  

Counsel for Defendants  
Christopher Hancock and  
John Bradford "Brad" Hancock

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| MILCAH "MIMI" MULUGETA, | : | |
| | : | Civil Action File No. |
| Plaintiff, | : | |
| vs. | : | 1:17-cv-03583-LMM |
| | : | |
| TAS OF ATLANTA, LLC; ROCK AND TACO SS, LLC; PAUL YUWACHIT; CHRISTOPHER HANCOCK; and JOHN BRADFORD "BRAD" HANCOCK, | : | |
| | : | |
| Defendants. | : | |

## CERTIFICATE OF SERVICE

I hereby certify that on this date, I filed this Motion with Court's electronic filing system that will automatically provide service to all counsel of record.

This 19th day of September 2019.

*s/ Charles R. Bridgers*
Charles R. Bridgers
Georgia Bar No. 080791

20